UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Gary W. Howard**

    **v.**                                                      Civil No. 05-cv-277-PB
                                                        Opinion No. 2007 DNH 001

**Warden, Northern New Hampshire**
**Correctional Facility**

**MEMORANDUM AND ORDER**

    Gary Howard was convicted of five counts of aggravated felonious sexual assault and one count of second degree assault. He was sentenced to consecutive ten-to-twenty-year terms on three of the aggravated felonious sexual assault charges and suspended sentences on the remaining charges. Howard is currently incarcerated in the New Hampshire Correctional Facility ("NHCF").

    On August 4, 2005, Howard filed a petition for a writ of habeas corpus in this Court, arguing that his Sixth Amendment right to effective assistance of counsel was violated by his counsel's strategic decision to concede all but one element of the charged crimes. He also argues that the state trial court violated his right to due process by failing to conduct a

colloquy to determine whether he had authorized this strategy. Larry Blaisdell, Warden of the NHCF, moves for summary judgment, arguing that Howard's petition is without merit.  For the reasons set forth below, I grant the Warden's motion.

## I. BACKGROUND[1]

On October 22, 1999, Howard visited the home of his ex-wife, Tina Howard, in Raymond, New Hampshire to spend the weekend with his three sons and his twelve-year-old stepdaughter, K.A.  Tina Howard, K.A.'s mother, left shortly thereafter to spend the night at her boyfriend's house.  Later that evening, and again in the early morning hours of October 23, 1999, Howard sexually assaulted K.A.

At approximately 10:00 a.m. on October 23, 1999, K.A. telephoned her mother, informing her that Howard had raped her. Within thirty minutes of the conversation, K.A.'s mother returned to the residence with officers from the Raymond Police

---

[1] The facts of the case are drawn primarily from the findings of the Rockingham County Superior Court in its order denying Howard's motion for a new trial.  State v. Gary Howard, 00-S-76-81, Rockingham Superior Court (N.H. Aug. 8, 2004). Certain details have been filled in by consulting other exhibits.

Department.  K.A. then gave a statement to the police describing the assault.

At approximately 3:30 p.m. that afternoon, officers took K.A. to Dr. Gwendolyn Gladstone, a pediatrician who specializes in examining children in cases of potential abuse or neglect. K.A. described the details of the rape to Dr. Gladstone, who then examined K.A. and found genital bruising, swelling and bruising on the back of her head, a lip injury consistent with a bite, and soreness in the muscles beneath her armpits.  Dr. Gladstone also took photographs of the injuries and prepared a rape kit.  At Howard's 2000 trial, Dr. Gladstone opined--based on the nature of K.A.'s genital injuries--that vaginal penetration had occurred within 48 to 72 hours of the examination.

Alan Giusti, a forensic DNA examiner with the Federal Bureau of Investigation ("FBI"), testified at Howard's trial that he had tested several items from K.A.'s rape kit, including two vaginal swabs and an underwear cutting stained with semen.  According to his testimony, the odds that semen he had obtained from the vaginal swab and the underwear cutting came from a person other than Howard were one in 15 trillion.  K.A. also testified at trial, providing a detailed account of the assaults.

-3-

Howard did not testify. Moreover, his attorney did not contest K.A.'s account of the night in question. Rather, he argued in his opening and closing statements that Howard was too intoxicated at the time of the assaults to have formed the intent required for the charged offenses. He also elicited testimony to that effect from K.A. Specifically, she testified that Howard was "really, really drunk" on the night of the assaults.

Outside the presence of the jury on the second day of trial, the prosecutor asked the court to make a record that Howard had consented to his counsel's strategy. The court asked Howard's counsel if he had discussed the strategy with Howard, and he stated that he had done so. The court did not discuss the issue with Howard.

On August 11, 2000, after a three-day trial, the jury found Howard guilty of five counts of aggravated felonious sexual assault and one count of second degree assault. Howard appealed his convictions to the New Hampshire Supreme Court, asserting that the trial court erred by declining to conduct a colloquy regarding his counsel's strategy. On April 9, 2003, the New Hampshire Supreme Court affirmed his convictions.

## II. **STANDARD OF REVIEW**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), I may grant Howard's petition for a writ of habeas corpus only if the adjudication of his claims in state court: (1) "resulted in a decision that was contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "involved an unreasonable application" of such law.  28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 402-13 (2000) (interpreting § 2254(d)); Williams v. Matesanz, 230 F.3d 421, 424-25 (1st Cir. 2000).  In this context, "clearly established federal law, as determined by the Supreme Court of the United States" refers to the holdings of the Supreme Court as of the time of the relevant state court decision.  See Williams, 529 U.S. at 412.

Accordingly, I must first ascertain whether the state court's decision was contrary to relevant Supreme Court precedent.  See id. at 404-06; Williams, 230 F.3d at 426.  A decision is contrary to Supreme Court precedent if the state court: (1) applied a rule that contradicts the governing law set

forth by the Supreme Court; or (2) reached a different result than the Supreme Court arrived at in a case involving materially indistinguishable facts.  See Williams, 529 U.S. at 404-08; Williams, 230 F.3d at 424-25; see also Ramdass v. Angelone, 530 U.S. 156, 165-66 (2000) (plurality opinion of Kennedy, J.).  In essence, this initial inquiry requires Howard to show that "Supreme Court precedent requires an outcome contrary" to that reached by the state court.  Williams, 230 F.3d at 425 (quoting O'Brien v. Dubois, 145 F.3d 16, 24-25 (1st Cir. 1998)).

If the state court's decision was not contrary to Supreme Court precedent, I must then ask whether the state court's decision involved an "objectively unreasonable" application of clearly established federal law, as determined by the Supreme Court.  See Williams, 529 U.S. at 407-11; Phoenix v. Matesanz, 233 F.3d 77, 80-81 (1st Cir. 2000); Williams, 230 F.3d at 425.  A decision will not be deemed to be objectively unreasonable solely because the state court applied the law erroneously or incorrectly.  See Williams, 529 U.S. at 409-12.  Rather, to be objectively unreasonable, the state court's application of law must be so erroneous or incorrect as to fall "outside the

universe of plausible, credible outcomes." Williams, 230 F.3d at 425 (quoting O'Brien, 145 F.3d at 25); see Williams, 529 U.S. at 409-11 (rejecting the "reasonable jurist" standard as impermissibly subjective).

AEDPA's deferential standard of review applies only to claims adjudicated on the merits in the state court proceedings. Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003) (citations omitted). For claims not adjudicated on the merits by the state court, I apply a *de novo* standard of review. Id.

### III.  ANALYSIS

**A.  Due Process**

Howard contends that the state court deprived him of his Fourteenth Amendment right to due process by failing to conduct a colloquy regarding his attorney's strategic decision to concede all but one element of the charged offenses. Because the New Hampshire Supreme Court adjudicated this claim on the merits, the AEDPA's deferential standard of review applies.

In cases involving a guilty plea or its functional equivalent, the trial court must conduct a colloquy with the

defendant to determine that he has knowingly and voluntarily waived his rights to a jury trial, to confront his accusers, and to avoid self-incrimination.  See Boykin v. Alabama, 395 U.S. 238, 243-44 (1969); State v. Foote, 149 N.H. 323, 325 (2003). Howard, however, has failed to cite any Supreme Court decision that could reasonably be construed to require a similar colloquy when a defendant concedes certain elements of a charged offense at trial in order to focus the jury's attention on alleged weaknesses in the prosecution's case with respect to other elements.

Here, Howard's counsel argued in his opening statement and closing argument that intoxication prevented Howard from forming the mental state required for conviction.  Given the overwhelming evidence offered by the prosecution to support its claim that Howard had committed the charged assaults, and the existence of at least some evidence to support counsel's argument that Howard was too intoxicated to act with the requisite intent, this was a viable defense strategy.  Supreme Court precedent simply does not require a colloquy between the court and the defendant under such circumstances.

## B.   Ineffective Assistance of Counsel

Howard also claims that his attorney's strategy of conceding all but one element of the charged offenses violated his Sixth Amendment right to effective assistance of counsel.  Because the state court did not address this argument, I review it *de novo*. Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001).

An ineffective assistance of counsel claim can only be successful if petitioner shows: "(1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant." Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)).  Petitioner bears the burden of showing both ineffectiveness and prejudice.  Scarpa v. DuBois, 38 F.3d 1, 8-9 (1st Cir. 1994).

Here, even if Howard could satisfy the first prong of the Strickland test, he has not met his burden with respect to the second prong.  To satisfy the prejudice prong, Howard must establish that "there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Strickland, 466 U.S. at 694. Where the evidence in a case is overwhelming, an attorney's "strategy to concede the other elements of the offense [is] reasonable" and therefore unlikely to prejudice to a defendant. See Arnold, 126 F.3d at 89. In this case, the evidence that Howard engaged in the alleged conduct--i.e., the victim's detailed testimony, corroborating medical evidence, and the presence of semen on the vaginal swabs and underwear cutting with a DNA profile matching Howard's--was overwhelming. Accordingly, his attorney's "'intent' defense was appropriately directed at the most questionable aspect of the Government's case:" proving that Howard acted with the requisite mental state on the night in question. See Arnold, 126 F.3d at 89.

Howard's argument that this strategy was prejudicial and that the result of the trial would have somehow been different if his attorney had contested the other elements of the crimes is unpersuasive given the record before me. Thus, I hold that Howard's ineffective assistance of counsel claim lacks merit.

### IV.   **CONCLUSION**

For the reasons set forth herein, I grant the Warden's motion for summary judgment (Doc. No. 23).  The clerk is instructed to enter judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

January 3, 2007

cc:   Gary W. Howard, pro se
      Nicholas P. Cort, Esq.